**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

**DEBORAH INNIS, on behalf of the Telligen, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**

**Plaintiff,**

**v.**

**BANKERS TRUST COMPANY OF SOUTH DAKOTA, a South Dakota Corporation,**

**Defendant.**

**Case No. 4:16-cv-650**

## COMPLAINT

Plaintiff Deborah Innis ("Plaintiff"), by her undersigned attorneys, on behalf of the Telligen, Inc. Employee Stock Ownership Plan (the "Plan") and similarly situated participants in the Plan, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1. Plaintiff brings this suit against Bankers Trust Company of South Dakota ("Bankers Trust"), the trustee for the Telligen, Inc. Employee Stock Ownership Plan when the Plan acquired shares of Telligen, Inc. ("Telligen").[1]

[1] Unless a particular subsidiary or affiliate is referenced in the Complaint, "Telligen" includes the following subsidiaries and affiliates of Telligen: (i) Telligen Health Management Solutions; (ii) Telligen Illinois, LLC; (iii) Telligen New York, LLC; and (iv) Telligen Community Initiative.

2. Plaintiff is a participant in the Plan and has vested in shares of Telligen allocated to her accounts in the Plan.

3. This action is brought under Sections 409, 502(a)(2), and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1109, 1132(a)(2) and 1132(a)(3), for losses suffered by the Plan, and other relief, caused by Bankers Trust when it authorized the Plan to buy shares of Telligen in 2013 for more than fair market value.

4. As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits as a result of Bankers Trust's violations of ERISA's prohibited transaction rules.

5. Telligen is a privately-held company. On December 31, 2013, Telligen and/or its principal shareholders and/or other entities controlled by them sold all of the outstanding and issued shares in the company to the Plan and in exchange received a twenty-year note, accruing 6% (six percent) interest, of $37,500,000 (the "ESOP Transaction" or "Transaction").

6. Bankers Trust represented the Plan and its participants as Trustee in the ESOP Transaction. The ESOP Transaction allowed Telligen and/or its principal shareholders and/or other entities controlled by them to unload their shares in Telligen at an inflated price of $37.50 per share and saddle Plan participants with a loan to finance the transaction. Bankers Trust failed to fulfill its duties to the Plan and Plan participants, including Plaintiff.

7. Telligen and/or its principal shareholders and/or other entities controlled by them, with Bankers Trust's authorization, caused Telligen to loan money to the Plan to buy their shares of Telligen. Bankers Trust authorized the Plan to borrow from the company the $37,500,000 payable in full over twenty years at a rate of 6% per annum. The selling shareholders therefore profited by saddling the Plan and Telligen employees with millions of dollars of debt, payable to

Telligen and/or its principal shareholders and/or other entities controlled by them at unreasonably inflated interest rates.

8. Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by her and similarly situated participants, as a result of Bankers Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA.

**JURISDICTION AND VENUE**

9. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require Bankers Trust to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

10. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in this District, Telligen is headquartered in this District and Plaintiff resides in this District.

**PARTIES**

12. At all relevant times, Plaintiff Deborah Innis has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Plaintiff resides in West Des Moines, Iowa. She is vested in shares of Telligen in her Plan account.

13. Defendant Bankers Trust was the Trustee of the Plan at the time of the ESOP Transaction. Bankers Trust at all relevant times was a “fiduciary” under ERISA because it was the Trustee. As Trustee, Bankers Trust had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize the ESOP Transaction. Bankers Trust was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times. Bankers Trust is headquartered in Sioux Falls, South Dakota.

**FACTUAL ALLEGATIONS**

14. Telligen is a privately held entity that, around the relevant period, had approximately 550 employees. Telligen bills itself as a “population health management company that conducts its business in the federal, state and commercial markets” and knows “healthcare and how it’s delivered better than anyone.” In 2013, Telligen served four large populations, including Iowa Medicaid, Oklahoma Medicaid, Iowa Medicare and Illinois Medicare. Telligen is headquartered at 1776 West Lakes Parkway, West Des Moines, Iowa 50266.

15. Telligen is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Telligen adopted the Plan effective January 1, 2013. Employees of Telligen participate in the Plan. The Plan is a retirement plan governed by ERISA. Telligen is the Plan’s administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

16. Telligen’s revenues declined every year from 2009 through 2012. Telligen nevertheless forecasted revenue growth for every year from 2014 through 2018.

17. Telligen appointed Bankers Trust as Trustee of the ESOP in 2013 for the purpose of representing the Plan in the proposed ESOP Transaction. It is unknown whether Bankers Trust hired anyone to act as its financial advisor or provide valuation services for the proposed ESOP Transaction.

18. The Plan was administered at 1776 West Lakes Parkway, West Des Moines, Iowa 50266.

19. As Trustee for the Plan, it was Bankers Trust's exclusive duty to ensure that any transactions between the Plan, Telligen and/or its principal shareholders and/or other entities controlled by them, including loans to the Plan and acquisitions of Telligen stock by the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

20. In contemplation of the ESOP Transaction, Telligen set in motion a series of related events, as explained in the Telligen Disclosure Memorandum for the ESOP Investment Election. Telligen's plan was as follows: First, there was to be a two-step merger process under which Telligen ("Old Telligen") merged into Telligen Interim, LLC. Telligen Community Initiative ("TCI") was the sole member of Telligen Interim, LLC. Telligen Interim, LLC then merged into Telligen, Inc., in which TCI became the sole shareholder. Then, the Plan was to purchase all outstanding and issued shares (1,000,000) of Telligen, Inc. stock from TCI. In exchange, Telligen would receive a twenty-year promissory note in the amount of $37,500,000 from the Plan. The final event was the Plan's subscription from Telligen for newly issued Telligen shares using the proceeds from the ESOP Investment Election.

21. On December 31, 2013, Bankers Trust, in its capacity as Trustee of the Plan, purchased all 1,000,000 outstanding and issued shares of Telligen Common Stock from TCI (and/or entities controlled by TCI and/or its principal shareholders) in consideration for payment of $37,500,000. The Plan paid $37.50 per share for the Telligen stock in the ESOP Transaction, and as a result Telligen is wholly owned by the Plan.

22. The sale was seller-funded by a $37,500,000 loan from TCI (and/or entities controlled by TCI and/or its principal shareholders) to the Plan to be used to buy Telligen stock.

Bankers Trust caused the Plan to issue a note payable to TCI in the amount of $37,500,000 to purchase Telligen stock from TCI. It was payable in full over twenty years at a rate of 6% per annum.

23. In early 2014, employees eligible to participate in the Plan were given a one-time opportunity to transfer all or any portion of their eligible 401(k) Retirement Plan account balance to the Plan (the "ESOP Investment Election").

24. The ESOP Investment Election was intended to exploit Plan participants by convincing them to contribute additional retirement funds to an investment rapidly losing money.

25. The ESOP Investment Election provided a way for the Plan's sponsor and trustee to inject money into the Plan and raise Plan assets.

## FIRST CLAIM FOR RELIEF

### Engaging in Prohibited Transactions Forbidden by ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b)

26. Plaintiff incorporates the preceding paragraphs as though set forth herein.

27. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Bankers Trust, from causing a plan, here the Plan, from engaging in a sale or exchange of any property, here Telligen stock, with a party in interest, here Telligen (the Plan's sponsor and administrator, whose employees participate in the Plan) or other party in interest sellers. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Bankers Trust from causing the Plan to borrow money from a party in interest Telligen. ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E), prohibits Bankers Trust from causing the Plan to acquire Telligen securities.

28. Bankers Trust engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.


29. The loan and stock transactions between the Plan and the Telligen and/or its principal shareholders and/or other entities controlled by them were authorized by Bankers Trust in its capacity as Trustee for the Plan.

30. ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

31. Bankers Trust acted on behalf of Telligen and/or its principal shareholders and/or other entities controlled by them in connection with the Plan's loan and stock transactions in 2013 with Telligen and/or its principal shareholders and/or other entities controlled by them by causing the Plan to acquire Telligen stock. This greatly benefited Telligen and/or its principal shareholders and/or other entities controlled by them to the substantial detriment of the Plan, even though Bankers Trust was required to serve the interests of the Plan in connection with any such transaction.

32. Bankers Trust engaged in prohibited transactions in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), in the ESOP Transaction.

33. Bankers Trust received compensation from Telligen and/or its principal shareholders and/or other entities controlled by them as Trustee for the Plan in violation of ERISA § 406(b)(3).

34. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any

losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

35.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

36.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

37.     Bankers Trust has caused millions of dollars of losses to the Plan by the prohibited transactions in an amount to be proven more specifically at trial.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All persons who were vested participants in the Telligen, Inc. Employee Stock Ownership Plan. Excluded from the Class are the shareholders and entities controlled by them who sold their Telligen stock to the Plan and their immediate families; the directors of Telligen; and legal representatives, successors, and assigns of any such excluded persons.

39.     The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class Members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2015 indicates that there were 661 participants in the ESOP as of December 31, 2015.

40.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

      i. Whether Bankers Trust was an ERISA fiduciary of the Plan;

    ii. Whether Bankers Trust's fiduciary function to the Plan included serving as Trustee in the Plan's acquisition of Telligen stock;

    iii. Whether Bankers Trust engaged in prohibited transactions under ERISA by permitting the Plan to purchase Telligen stock and take a loan from Telligen;

    iv. Whether Bankers Trust engaged in a good faith valuation of the Telligen stock in connection with the ESOP Transaction;

    v. Whether Bankers Trust caused the Plan to pay more than fair market value for Telligen stock;

    vi. Whether Bankers Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

    vii. Whether Bankers Trust engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

    viii. Whether the seller or sellers of Telligen stock to the Plan were parties in interest; and

    ix. The amount of losses suffered by the Plan and its participants as a result of Bankers Trust's ERISA violations.

41. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan plunged in value after purchasing Telligen stock for more than fair market value, and she continues to suffer such losses in the present because Bankers Trust failed to correct the overpayment by the Plan in its time as trustee.

42. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

43. Class certification of Plaintiff's Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Bankers Trust, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

44. In the alternative, class certification of Plaintiff's Claim for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Bankers Trust has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Bankers Trust's violations of ERISA.

45. The names and addresses of the Plaintiff Class members are available from the Plan. Notice will be provided to all members of the Plaintiff Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

A. Declare that Defendant Bankers Trust caused the Plan to engage in prohibited transactions;

B. Enjoin Defendant Bankers Trust from further violations of ERISA and its responsibilities, obligations, and duties;

C. Order that Defendant Bankers Trust make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches of ERISA and restore any profits it has made through use of assets of the Plan;

D. Order that Defendant Bankers Trust provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant Bankers Trust;

E. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

F. Order Bankers Trust to disgorge any fees it received in conjunction with its services as Trustee for the Plan as well as any earnings and profits thereon;

G. Order Bankers Trust to pay prejudgment interest;

H. Enter an order certifying this lawsuit as a class action; and

I. Award such other and further relief as the Court deems equitable and just.

Dated: December 27, 2016

Respectfully submitted,

BRADY PRESTON BROWN PC

By:    /s/ Brad J. Brady
Brad J. Brady, Iowa Bar No. AT0001138
2735 First Avenue SE
Cedar Rapids, IA  52402
Ph. (319) 866-9277
Fax (319) 866-9280
bbrady@bradyprestonbrown.com

BAILEY & GLASSER LLP

By:   /s/ Gregory Y. Porter
Gregory Y. Porter
Ryan T. Jenny
Patrick O. Muench
1054 31st Street, NW
Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*To be Admitted Pro Hac Vice*

*Attorneys for Plaintiff*